KEVIN W. ALEXANDER (SBN: 175204)
kalexander@gordonrees.com
YAARA L. ELISHA (SBN: 252227)
yelisha@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, California 92101
Telephone: 619.696.6700
Facsimile: 619.696.7124

Attorneys for Defendant CREDITANSWERS, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS DEL RIO, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>vs.<br><br>CREDITANSWERS, LLC,<br><br>                      Defendant. | CASE NO. 10 CV 0346 WQH (BLM)<br><br>**DEFENDANT CREDITANSWERS, LLC'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |

Notice is hereby given that Defendant CreditAnswers, LLC hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order entered in this action on May 27, 2010 denying CreditAnswers' Petition to Compel Arbitration and Stay Pending Action.

Dated: June 7, 2010

GORDON & REES LLP

By: Kevin W. Alexander
Yaara L. Elisha
Attorneys for Defendant
CreditAnswers, LLC

-1-

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS DEL RIO, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br>vs.<br>CREDITANSWERS, LLC,<br><br>                 Defendant. | CASE NO. 10cv346-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is Defendant's Petition to Compel Arbitration and Stay Pending Action, Or in the Alternative, to Stay Federal Action Pending Resolution of Parallel State Action ("Petition to Compel Arbitration"). (Doc. # 10).

**I.    Background**

    On February 11, 2010, Plaintiff Luis Del Rio ("Del Rio") initiated this action by filing a Complaint in this Court. (Doc. # 1). The Complaint alleges that Defendant CreditAnswers, LLC ("CreditAnswers") "operates a for-profit debt settlement company," which offers a "debt settlement program ... targeted to consumers with thousands of dollars of unsecured debt." (*Id.* ¶ 21).

    The Complaint alleges that "[s]ometime before or during April 2008, Plaintiff contacted Defendant after viewing Defendant's website," (*id.* ¶ 33), and, after consultation with an employee of Defendant, "Plaintiff agreed to CreditAnswers' standard form contract of adhesion to enter CreditAnswers' Program." (*Id.* ¶ 42). The Complaint alleges that

"CreditAnswers ... proceeded to conjure the illusion that Plaintiff's financial worries were a thing of the past, and all Plaintiff had to do was pay CreditAnswers over $4,000, before CreditAnswers resolved a single debt...." (*Id.* ¶ 32).

The Complaint asserts seven causes of action: (1) violation of California Business and Professions Code § 17200; (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), 1770(a)(19); (3) violation of the Credit Repair Organizations Act, 15 U.S.C. § 1678; (4) intentional interference with contractual relations; (5) tort in essence; (6) negligence per se; and (7) declaratory relief. The Complaint includes class action allegations related to three putative classes consisting of "all persons in California" who have "engaged the ... services of CreditAnswers" in the four years preceding the filing of the Complaint. (*Id.* ¶ 68). The Complaint seeks compensatory and punitive damages, a permanent injunction, attorney's fees, and "the Contract [between Plaintiff and Defendant] be adjudged rescinded and canceled." (*Id.* at 35). The Complaint alleges that "Plaintiff seeks actual, statutory and punitive damages in excess of $5,000...." (*Id.* ¶ 12).

Attached to the Complaint is a Debt Settlement Agreement ("Agreement"), which is dated June 19, 2009, and has the "electronic signature" of Plaintiff. (Swigart Decl., Ex. A, Doc. # 1 at 44 of 57). The Agreement states:

> **9. Arbitration of Dispute.** In the event of controversy, claim or dispute between the parties arising out of or relating to this agreement or the breach, termination, enforcement, interpretation or validity thereof, including the termination of the scope or applicability of this agreement to arbitrate, shall be determined exclusively by arbitration in Collin County, Texas, or in the county in which the Client resides, in accordance with the laws of the State of Texas or agreements to be made in and to be performed in Texas. The parties agree, the arbitration shall be administered by the American Arbitration Association ('AAA') pursuant to its rules and procedures.... The parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not preside over any form of representative or class proceeding. The parties shall share the cost of arbitration, not to include attorney's fees, equally. If the Client's share of the costs is greater than $1,000.00 (one thousand dollars), the company will pay the Client's share of costs in excess of that amount. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.

1  (Swigart Decl., Ex. A, Doc. # 1 at 43 of 57; *see also* Burton Decl., Ex. A at 4, Doc. # 10-2
2  (same)).
3      On February 15, 2010, CreditAnswers filed a complaint against Del Rio in Texas state
4  court, seeking declaratory relief related to the Agreement between Del Rio and CreditAnswers.
5  (Doc. # 4, Ex. A ¶ 8).
6      On April 5, 2010, CreditAnswers filed the Petition to Compel Arbitration in this Court.
7  (Doc. # 10). CreditAnswers "move[s], pursuant to the Federal Arbitration Act, for an order
8  (i) compelling arbitration of the instant action and (ii) staying this Federal Court action until
9  arbitration is completed. In the alternative, ... CreditAnswers ... move[s] for a stay of the
10 instant action pending resolution of a parallel case between these parties currently pending in
11 Texas state court." (*Id*. at 1-2). CreditAnswers contends that "Plaintiff entered into a valid and
12 enforceable arbitration agreement," and Plaintiff's "claims are within the scope of [the]
13 arbitration agreement." (Doc. # 10-1 at 5).
14     On April 23, 2010, Plaintiff filed an opposition to the Petition to Compel Arbitration.
15 (Doc. # 12). Plaintiff contends that "California law applies in determining the enforceability
16 of the arbitration provision," and "under California law, Defendant's arbitration agreement is
17 unconscionable" and "the entire arbitration clause ... [is] unenforceable." (*Id*. at 4, 10, 18).
18     On May 3, 2010, CreditAnswers filed a reply in support of the Petition to Compel
19 Arbitration. (Doc. # 13).
20     On May 3, 2010, Plaintiff filed a Notice of Order of Dismissal in Related Texas Action.
21 (Doc. # 14). Attached to the Notice is a copy of an order issued on May 3, 2010 by a Texas
22 state court, dismissing the declaratory action filed by CreditAnswers against Del Rio for lack
23 of personal jurisdiction. (Doc. # 14, Ex. A).
24     On May 17, 2010, the Court conducted oral argument on the Petition to Compel
25 Arbitration. (Doc. # 15).
26 **II.   Discussion**
27     The Federal Arbitration Act ("FAA"), which governs arbitration agreements within
28

contracts involving interstate commerce,[1] "provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' and permits a party 'aggrieved by the alleged ... refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. §§ 2, 4). "The court's role under the [FAA] is ... limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing, *inter alia*, 9 U.S.C. § 4).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Generally applicable contract defenses, such as unconscionability, may render an arbitration provision unenforceable. Whether an arbitration provision is unconscionable is governed by state contract law." *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1085 (9th Cir. 2010) (citation omitted).

The Agreement contains a choice-of-law provision which states that the Agreement is governed by Texas law. (Swigart Decl., Ex. A, Doc. # 1 at 43 of 57; *see also* Burton Decl., Ex. A at 4, Doc. # 10-2). Plaintiff contends that the choice-of-law provision is unenforceable, and California law applies. Defendant contends that the choice-of-law provision is enforceable and Texas law applies.

The parties agree that this Court "must apply the forum state's choice of law rules to determine the controlling substantive law." (Doc. # 10-1 at 3; *see also* Doc. # 12 at 10). Under California law, a court must "evaluate the [choice-of-law] clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws." *Wash. Mut. Bank, F.A. v. Superior Court*, 24 Cal. 4th 906, 916 (2001). The California Supreme Court has stated:

> [T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other

---

[1] There is no dispute that the Agreement involves interstate commerce.

>   reasonable basis for the parties' choice of law. If neither of these tests is met, ... the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) (quotation omitted); *see also Omstead*, 594 F.3d at 1086 (same, applying California law).

CreditAnswers is a Texas limited liability company, with its principal place of business in Texas. (Burton Decl. ¶ 3, Doc. # 10-2). Accordingly, Texas "has a substantial relationship to the parties or their transaction," and "there is [a] ... reasonable basis for the parties' choice of law." *Nedlloyd*, 3 Cal. 4th at 466; *see id.* at 467 (a "substantial relationship [is] present when one of the parties is domiciled in the chosen state" and "[i]f one of the parties resides in the chosen state, the parties have a reasonable basis for their choice") (quotations omitted).

The Court must next determine "whether the chosen state's law is contrary to a fundamental policy of California." *Id.* at 466. The parties agree that, "[u]nder Texas law, an arbitration clause with a class action waiver ... is likely to be enforceable." (Doc. # 12 at 11 n.9 (citing *AutoNation USA, Corp. v. Leroy*, 105 S.W.3d 190, 199-200 (Tex. App. 2003)); *see also* Doc. # 10-1 at 6-7 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002))).[2] The parties dispute whether the arbitration provision is enforceable under California law. Plaintiff contends that under California law, the arbitration provision—and, in particular, the class action waiver in the arbitration provision—is unconscionable. Defendant contends that it is not.

Under California law, if a contractual provision is found to be unconscionable, it is unenforceable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). If a contractual provision, such as the class action waiver in the Agreement, is

---

[2] The Court assumes without deciding that the Agreement's arbitration provision would be enforceable under Texas law, and that Plaintiff's claims fall within the scope of the Agreement's arbitration provision.

unenforceable, California's fundamental policy is implicated. *See Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1067 (N.D. Cal. 2007) ("*Oestreicher I*") ("[A]n analysis as to whether the class action waiver at issue here implicates a fundamental policy of California requires an analysis of the specific circumstances of this case. In essence, this reduces to a consideration of whether the class action waiver would be unenforceable under California law. If so, California's fundamental policy is implicated."), *affirmed by Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489 (9th Cir., Apr. 02, 2009) ("*Oestreicher II*"); *see also Omstead*, 594 F.3d at 1085 ("We adopt the reasoning of *Oestreicher I* and apply it to this case."); *see also id.* at 1086 ("Here, the Agreement's choice-of-law provision is unenforceable for the same reasons identified in *Oestreicher I*. The class action waiver is unconscionable under California law ..., and California has a materially greater interest than Texas in applying its own law. Accordingly, the validity of the arbitration provision is governed by California law.").

"The framework for determining the enforcement of class action waivers was set forth in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005)." *Oestreicher I*, 502 F. Supp. 2d at 1067; *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 987 (9th Cir. 2007) ("The rule announced in *Discover Bank* is simply a refinement of the unconscionability analysis applicable to contracts generally in California, as discussed in *Armendariz*...."). In *Discover Bank*, the California Supreme Court stated:

> We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, .... such waivers are unconscionable under California law and should not be enforced.

*Discover Bank*, 36 Cal. 4th at 162-63. Under the *Discover Bank* test, the "three indicia of unenforceability" are "(1) whether the arbitration clause was part of a contract of adhesion, (2) whether disputes implicating the arbitration clause typically involve small amounts of damages, and (3) whether [the defendant] is alleged to have carried out a scheme to deliberately cheat large numbers of customers out of individually small sums of money." *Oestreicher I*, 502 F. Supp. 2d at 1067.

1       First, "[u]nder California law, a contract of adhesion is defined as a standardized
2  contract, imposed upon the subscribing party without an opportunity to negotiate the terms."
3  *Shroyer*, 498 F.3d at 983 (quotations omitted). There is no dispute that the Agreement is a
4  standardized contract. (Burton Decl. ¶ 4, Doc. # 10-2 ("Prior to participation in its Debt
5  Settlement Program, CreditAnswers requires all of its clients to sign an enrollment agreement
6  that contains a mandatory arbitration provision."); *see also* Compl. ¶ 42, Doc. # 1 ("Plaintiff
7  agreed to CreditAnswers' standard form contract of adhesion to enter CreditAnswers'
8  Program.")). Plaintiff has submitted an affidavit stating that "[a]t no time was I given the
9  opportunity to negotiate any of the terms of the Service Agreement, and [I] was required to
10 either accept or reject the terms contained in Defendant's Service Agreement." (Del Rio Decl.
11 ¶ 3, Doc. # 12-1). Defendant has not challenged this assertion. However, Defendant contends
12 that "it is fair to assume that had Del Rio wanted litigation of subsequent disputes to be a
13 viable option, he would have been able to find a debt settlement company willing to accept
14 such a term." (Doc. # 13 at 6 n.4). Defendant has not supported this contention with evidence.
15 Moreover, the Ninth Circuit, applying California law, has repeatedly rejected this "'meaningful
16 alternative' or 'marketplace alternatives' argument." *Shroyer*, 498 F.3d at 985 (citing cases).
17 The Court finds that the first *Discover Bank* requirement—whether the arbitration clause was
18 part of a contract of adhesion—is satisfied.
19       The second *Discover Bank* requirement is "whether disputes implicating the arbitration
20 clause typically involve small amounts of damages." *Oestreicher I*, 502 F. Supp. 2d at 1067.
21 In *Oestreicher I*, the court stated:

22   The typical case involving an unenforceable class action waiver involves
     essentially negligible sums of money on an individual basis. Here, Oestreicher
23   paid over four thousand dollars for his computer. In cases involving comparable
     sums, other courts have held that class action waivers were enforceable and did
24   not implicate fundamental California policies. For example, in *Provencher v.
     Dell, Inc.*, 409 F. Supp. 2d 1196, 1202-4 (C.D. Cal. 2006), the court found that
25   no fundamental policy was implicated by an arbitration clause barring class
     actions where the named plaintiff had 'spent over $1600 for the Dell computer,
26   including more than $250 for Dell's extended service warranty.' Likewise, in
     *Omstead*, 473 F. Supp. 2d at 1024, the court held that individual claims of
27   $1,200 to $1,500 were not 'small' for the purposes of the *Discover Bank*
     analysis.
28
           However, the California Court of Appeal has squarely rejected the

>     proposition that sums exceeding $1,000 necessarily fall outside the framework of *Discover Bank*. As the court explained, '[w]hile $1,000 is not an insignificant sum, many consumers ... may not view that amount as sufficient to warrant individual litigation, and certainly it is not sufficient to obtain legal assistance in prosecuting the claim.' *Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1452 (2006). Accordingly, '[d]amages that may or may not exceed $1,000 do not take [a] class action waiver outside a setting in which disputes between the contracting parties predictably involve small amounts of damages.' *Id.* The court in *Cohen* expressly rejected the reasoning in *Provencher* regarding the amount of recovery. *Id.* at 1455 n.13; *see also Douglas v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1068 (9th Cir. 2007) (holding that *Provencher* has been 'expressly disavowed'). Additionally, the holding in *Omstead* appears contrary to holding in *Cohen*. As in *Cohen*, the amount at issue here is not insignificant, but also not substantial. Accordingly, the second *Discover Bank* factor is satisfied.

*Id.* at 1067-68 (some citations omitted). Subsequently, *Oestreicher I* was affirmed by the Ninth Circuit, 322 Fed. Appx. 489, the district court's ruling in *Omstead* was reversed, and the reasoning of *Oestreicher I* was expressly adopted by the Ninth Circuit. *See Omstead*, 594 F.3d at 1085.

Defendant contends that *Discover Bank*'s amount-of-damages requirement is not met, because Plaintiff alleges that he "seeks actual, statutory and punitive damages in excess of $5,000" (Doc. # 1 ¶ 12), and this amount "is more than twice the amount of damages in *Provencher* (approximately $1,600) which w[as] deemed sufficient to uphold a class arbitration waiver." (Doc. # 13 at 6). However, as discussed in *Oestreicher I*, *Provencher* has been "expressly disavowed" by the California Court of Appeals and the Ninth Circuit. *Oestreicher I*, 502 F. Supp. 2d at 1068. The California Supreme Court has stated that "*Discover Bank* was not intended to suggest that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be enforced. Rather, *Discover Bank* was an application of a more general principle: that although class action and arbitration waivers are not, in the abstract, exculpatory clauses, such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." *Gentry v. Superior Court*, 42 Cal. 4th 443, 457 (2007) (quotation omitted). Plaintiff has alleged that "the restitution owed to each individual member [of the proposed classes] is relatively small compared to the expense and burden of prosecuting individual cases." (Doc. # 1 ¶ 77). In his opposition brief, Plaintiff contended that

1  "[t]he amounts of damages for each proposed class member will typically range between $500
2  and $3,000." (Doc. # 12 at 7).  At oral argument, Plaintiff noted that *Discover Bank*'s amount-
3  of-damages requirement relates only to *actual* damages, *see, e.g.*, *Omstead*, 594, F.3d at 1082,
4  1086, whereas the $5,000 figure in the Complaint relates to "actual, statutory and punitive
5  damages." (Doc. # 1 ¶ 12).  But even if the figure is $5,000, the Agreement's arbitration
6  provision requires the client to pay a portion of the costs of arbitration, up to $1,000. (Swigart
7  Decl., Ex. A, Doc. # 1 at 43 of 57; *see also* Burton Decl., Ex. A at 4, Doc. # 10-2).
8  Accordingly, when considering whether the class action waiver is "exculpatory in practical
9  terms," *Gentry*, 42 Cal. 4th at 457, the amount at issue appears to be nearer to $4,000.[3]  The
10 Court finds that, based upon the allegations of the Complaint and the record before the Court,
11 this amount is sufficiently small to satisfy the second requirement of *Discover Bank*'s
12 unconscionability test in the context of this dispute.  *See Oestreicher II*, 322 Fed. Appx. at 492
13 ("Although $4000 is not an insignificant sum, we hold that it is a 'small amount' in the context
14 of the instant dispute, and that the class action waiver is thus unconscionable.... [M]any
15 consumers may not view $4000 as sufficient to warrant individual litigation, and certainly it
16 is not sufficient to obtain legal assistance in prosecuting the claim.") (quotations omitted); *cf.*
17 *Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 408-11
18 (2005) (relying upon *Discover Bank* in holding that a ban on class actions in the arbitration
19 clauses of franchise agreements was unconscionable, without regard to the size of the claims;
20 approximately 35 franchisees were involved, and their complaint sought over $470,000); *but*
21 *see Smith v. Americredit Fin. Servs., Inc.*, No. 09cv1076 DMS (BLM), 2009 WL 4895280, at
22 *7 (S.D. Cal., Dec. 11, 2009) (finding, with minimal discussion and no citation to *Oestreicher*
23 *I* or *II*, that damages of $5,128.77 "does not satisfy the second prong of *Discover Bank*").

---

25    [3] In its reply brief, Defendant states: "CreditAnswers hereby agrees to pay for the entire
26 cost of arbitration such that any purported unconscionability arising from the fee-splitting
   provision is not an issue." (Doc. # 13 at 8).  This offer does not negate the effect of the fee-
27 splitting provision for the purposes of the unconscionability analysis for two reasons: (1)
   Defendant has not agreed to pay the entire cost of arbitration for any other members of the
28 putative classes, and (2) "[u]nconscionability is determined as of the time the contract is
   made."  *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 91 (2003) (citing Cal. Civ. Code §
   1670.5).

The third and final *Discover Bank* requirement is that "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal. 4th at 162-63. The Complaint alleges:

> CreditAnswers['] business model is fraudulently premised on two basic misrepresentations: (1) that CreditAnswers possess[es] special skills and knowledge that enables them to negotiate a reduced balance to settle an outstanding debt–a task the consumer is unable to perform; and (2) that the consumer will realize a substantial reduction in the amount of debt they will ultimately pay. Both of these concepts are a blatant mischaracterization of the true nature of CreditAnswers' services, and are part of a fraudulently calculated scheme to entice the most desperate and unsuspecting consumers to enroll in CreditAnswers' Program.

(*Id.* ¶ 25; *see also id.* ¶ 23 ("Because CreditAnswers' Program only works if consumers are not making monthly payments on their unsecured debts (since creditors will not want to settle a debt if they are receiving monthly payments), there are inherent risks involved with participating in a CreditAnswers' Program that can have catastrophic effects on the consumer. CreditAnswers fails to adequately disclose to consumers the myriad of possible negative consequences of its debt settlement program...."); ¶ 24 ("[T]here is minimal incentive to render promised services because by charging up-front fees, CreditAnswers is compensated regardless of whether they negotiate anything for the consumer.... The end result is that CreditAnswers collects its up-front fees and then, by virtue of either circumstance or design, shuts its doors to consumers."); ¶ 32 ("The most outrageous aspect of CreditAnswers's business model are the people on which they prey. The consumer[s] who CreditAnswers targets are those who are in the most dire of financial situations. On the verge of financial collapse, CreditAnswers extends the proverbial olive branch to these consumers, promising debt salvation, only to find that CreditAnswers['] fraudulent scheme has deprived these consumers of the few remaining pennies in which they had to survive."); ¶ 77 ("[T]he restitution owed to each individual member [of the proposed classes] is relatively small compared to the expense and burden of prosecuting individual cases."); ¶ 111 ("CreditAnswers' conduct was malicious, willful, fraudulent and oppressive, done with conscious disregard for Plaintiff's rights and with the intent to injure Plaintiff...."). The Court finds that the Complaint adequately alleges that "the

party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal. 4th at 162-63.

The Court concludes that, based upon the allegations of the Complaint and the record before the Court, the class action waiver in the Agreement's arbitration provision is unconscionable under California law. Accordingly, Texas law "is contrary to a fundamental policy of California." *Nedlloyd*, 3 Cal. 4th at 466; *see also Omstead*, 594 F.3d at 1086; *Oestreicher II*, 322 Fed. Appx. at 491 ("Because ... [defendant]'s class action waiver is unconscionable under California law, enforcement of the waiver under Florida law would be contrary to a fundamental California policy.").

The Court must next "determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. If California has a materially greater interest than the chosen state, the choice of law shall not be enforced...." *Nedlloyd*, 3 Cal. 4th at 466. In determining which state has a greater interest, the Court considers factors such as "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 903 (1998).

California has a strong interest in this litigation: the putative classes consist only of California residents, and the Complaint alleges claims brought pursuant to the California Consumer Legal Remedies Act and the California Business and Professions Code. *See Oestreicher I*, 502 F. Supp. 2d at 1069 ("The fact that the putative class members are California residents and [defendant] is a Florida company favors California, as the governmental interest is stronger in protecting the party with inferior bargaining power. An additional factor favoring California is the fact that [plaintiff] has brought causes of action pursuant to California consumer protection statutes."); *see also Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1299 (2005) ("The state where a party to the contract is domiciled has an obvious interest in the application of its law protecting its citizens against the

unfair use of superior bargaining power."). The only interest of Texas which has been identified "is limited to enforcement of contractual provisions made by one of its corporate citizens." *Oestreicher II*, 322 Fed. Appx. at 491 (citation omitted). While Texas' interest is "not inconsequential," the Court finds that California has a materially greater interest than Texas in determining the enforceability of the class action waiver. *Id*. ("California has a materially greater interest than Florida in determining the enforceability of the class action waiver. [Plaintiff] seeks to represent a class composed solely of California residents and invokes solely California consumer protection laws. Florida's interest, by contrast, while not inconsequential, is limited to enforcement of contractual provisions made by one of its corporate citizens.").

The Court concludes that the Agreement's choice-of-law provision is unenforceable, and the validity of the arbitration provision is governed by California law. *See Omstead*, 594 F.3d at 1086 ("[T]he Agreement's choice-of-law provision is unenforceable for the same reasons identified in *Oestreicher I*. The class action waiver is unconscionable under California law because it satisfies the *Discover Bank* test, and California has a materially greater interest than Texas in applying its own law. Accordingly, the validity of the arbitration provision is governed by California law.").

As discussed above, the class action waiver in the Agreement's arbitration provision is unconscionable under California law. The sole remaining issue is whether the class action waiver can be severed from the remainder of the arbitration provision. *See id*. at 1086-87 ("Having found the class action waiver unconscionable under California law, the only remaining question is whether the class action waiver can be severed from the remainder of the arbitration provision.") (citing Cal. Civ. Code § 1670.5(a) (making discretionary a court's decision to sever an unconscionable contract clause)). In *Omstead*, the Ninth Circuit considered a similar arbitration provision to the one in the Agreement in this case. The Ninth Circuit stated:

> We find [the class action waiver] cannot be severed [from the remainder of the arbitration provision] because the class action waiver is 'central' to the arbitration provision. Because we decline 'to assume the role of contract author rather than interpreter,' the class action waiver renders the entire arbitration

provision unenforceable.  The district court erred when it found to the contrary and granted [defendant]'s motion to stay proceedings and compel arbitration.

*Id.* at 1087 (quoting *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1109 (9th Cir. 2003)). For the same reasons, the Court finds that the class action waiver is central to the Agreement's arbitration provision, and the class action waiver renders the entire arbitration provision unenforceable.  Accordingly, Defendant's motion to compel arbitration is denied.

Because the declaratory action filed by CreditAnswers against Del Rio in Texas state court has been dismissed, CreditAnswers' alternative motion to stay this action pending resolution of the Texas state action is denied as moot.

### III.   Conclusion

IT IS HEREBY ORDERED that the Petition to Compel Arbitration and Stay Pending Action, Or in the Alternative, to Stay Federal Action Pending Resolution of Parallel State Action is **DENIED**.  (Doc. # 10).

DATED: May 27, 2010

　　　　　　　　　　　　　　　　　*[signature: William Q. Hayes]*
　　　　　　　　　　　　　　　　　**WILLIAM Q. HAYES**
　　　　　　　　　　　　　　　　　United States District Judge

# Notice of Appeal Notification Form

**To:** Clerk, U.S. Court of Appeals  **Date:** 6/8/2010
**From:** U.S. District Court, Southern District of California
**Subject:** New Appeals Case Information & Docket Fee Notification

## Case Information

Case Title: LUIS DEL RIO, individually and on behalf of all others similarly situated v. CREDITANSWERS LLC

U.S.D.C. No.: 10-cv-00346-WQH -BLM     U.S.D.C. Judge: William Q. Hayes

Complaint/Indictment/Petition Filed: Complaint

Appealed Order Entered: 5/27/2010

Notice of Appeal Filed: 6/7/2010

Court Reporter: Melinda Setterman

## Docket Fee Notification

Docket Fee: [x] Paid    [ ] Not Paid    [ ] No Fee Required

USA/GOVT. APPEAL: [ ] Yes   [x] No

Date F/P granted (Show Date and Attach Copy of Order): _____

Was F/P Status Revoked? [ ] Yes   [ ] No

Companion Case(s): (Please list consolidated cases, if applicable) _____

## Counsel Information

**Appellant Counsel:**

Kevin W Alexander
Yaara Lea Elisha
GORDON AND REES
101 West Broadway, Suite 1600
San Diego, CA 92101
(619) 696-6700

**Appellee Counsel:**

David Christopher Leimbach
Joshua Swigart
HYDE & SWIGART
411 Camino del Rio South, Suite 301
San Diego, CA 92108-3551
(619) 233-7770

Counsel Status: [x] Retained   [ ] Appointed   [ ] Pro Se
Appointed _____
(Attach copy of order/minutes)

## SERVICE LIST

**Counsel for Appellant(s) and Appellee(s), as listed on the previous page, have been sent copies of the following items:**

| x | Transmittal to U.S.C.A. (Appellant and Appellee) |
|---|---|
| x | Case Information/Docketing Fee Notification Form (Appellant and Appellee) |
| x | Notice of Appeal (Appellant, Appellee, U.S. District Judge) |
| x | Transcript Designation and Ordering Form (Appellant Only, mailed separately) |
| x | ORDER, entered 5/27/2010 |

Form Completed And Documents Served By U.S. District Court Deputy Clerk:

A. Rowland                               s/ A. Rowland

Deputy's Name                            Deputy's Signature

UNITED STATES DISTRICT COURT
Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900
Phone: (619) 557-5600
Fax: (619) 702-9900

W. Samuel Hamrick, Jr.
Clerk of Court

To: Clerk, U.S. Court of Appeals
P.O. Box 193939
San Francisco, CA 94119-3939
(via electronic transmission)

Re: USCA No:
USDC No:   10-cv-00346-WQH -BLM
**Del Rio v. CreditAnswers LLC**

Clerk, U.S. Court of Appeals, enclosed herewith you will please find:

| | | | | | | |
|---|---|---|---|---|---|---|
| x | Notice of Appeal | | | | | |
| x | Case Information/Docket Fee Payment Notification Form | | | | | |
| | Original Clerk's Record in | | | set(s) of | | volume(s) |
| | Reporter's transcripts in | | | set(s) of | | volume(s) |
| | Lodgments in | | envelope(s) | | box(es) | folder(s) |
| | Judgment Order | | | | | |
| | Magistrate Judge's Report and Recommendation | | | | | |
| | F/P Order | | | | | |
| x | Civil Appeals Docketing Statement and Representation Statement (to be transmitted to US Court of Appeals via US mail) | | | | | |
| x | ORDER, entered 5/27/2010 | | | | | |
| x | Please acknowledge receipt | | | | | |

Sincerely yours,

W. Samuel Hamrick, Jr.
Clerk of Court

    s/ A. Rowland
Date: 6/8/2010                By:_____
                              A. Rowland, **Deputy**